IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| ROUNTREE MOTORS, INC. *et al.*, )<br>    Plaintiffs/Counterclaim Defendants, )<br>)<br>v. )<br>)<br>COMMONWEALTH DEALERS LIFE )<br>INSURANCE COMPANY a/k/a )<br>COMMONWEALTH DEALERS )<br>COMPANY, )<br>    Defendant-Counterclaimant. )<br>_____ ) | CIVIL NO. 3:13cv47 (DJN) |

## MEMORANDUM OPINION

This matter is now before the Court by consent of the parties pursuant to 28 U.S.C § 636(c)(1) on the parties' cross-motions for summary judgment (ECF Nos. 20, 22), in which Plaintiffs Rountree Motors, Inc., Rountree Motors of New Hampshire, Inc., Rountree Automotive, Inc., Kruziffer Automotive, Inc., and Kruziffer Motors, Inc. (collectively "Plaintiffs") move for a declaratory judgment that they are shareholders of Defendant's company and for summary judgment on their breach of contract and constructive fraud claims. Defendant Commonwealth Dealers Life Insurance Company ("CDLIC") also moves for a finding that Plaintiffs are not shareholders of CDLIC. Having reviewed the pleadings filed by the parties, the Court DENIES Plaintiffs' Motion for Summary Judgment and DENIES Defendant's Motion for Summary Judgment, because disputed material facts exist that render Summary Judgment inappropriate in this case.

I. BACKGROUND

The Court has reviewed each party's statement of undisputed facts, including the

extensive supporting documentation filed in support of the respective positions. Withholding discussion of disputed material facts, as required where the parties have submitted cross-motions for summary judgment, *see Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations omitted), the Court has concluded that the following narrative represents the facts for purposes of resolving the cross-motions for summary judgment.

Plaintiffs, a group of automobile dealerships owned by Robert Rountree that are no longer operational, allege ownership of stock in Defendant insurance company CDLIC. (Complaint "Compl." (ECF No. 1 at ¶¶ 5, 27-31; Pls.' Mem. in Supp. of Mot. for Summ. Judg. ("Pls.' Mem.") (ECF No. 23) at ¶ 2; Pls.' Answers and Resps. to Def.'s Interrogs. and Req. for Produc. of Docs. ("Pls.' Disc. Resps.") (ECF No. 22-2) at Interrog. No. 20.) Plaintiffs seek a declaratory judgment that they are shareholders of Defendant's company and allege claims for breach of contract or, in the alternative, constructive fraud.

Mark Albert, past President of Defendant's company and former general manager of one of Rountree's businesses, was authorized by the Board of Directors of Defendant's company to offer shareholder interest in Defendant's company in return for selling policies on Defendant's behalf. (Albert Aff. (ECF No. 21-3) at ¶¶ 2, 4, 15; Albert Dep. (ECF No. 21-5) at 45:1-25.) Albert was also "authorized to accept subscriptions for shares and to convey ownership interests in [Defendant's company]," although there had to be a written agreement to issue stock. (Albert Aff. at ¶ 19; Albert Dep. at 45:15-25.) Albert offered Plaintiffs the opportunity to sell Defendant's insurance policies, which they sold and collected $508,385 in commissions. (Albert Aff. at ¶¶ 17, 24; Rountree Dep. (ECF No. 21-2) at 10:4-25; Defendant's Memorandum in Support of Motion for Summary Judgment ("Def.'s Mem.") Exh. 6 (ECF. 21-6) at PX 176.)

In the early 2000s, Albert told Rountree that for Rountree to continue to sell Defendant's

insurance policies, Plaintiffs needed to become shareholders of Defendant CDLIC. (Rountree Dep. at 11:1-12; Albert Aff. at ¶ 3.) Albert provided Plaintiffs with "offering materials" about the shareholder program, which included a Private Placement Memorandum ("Memo"). (Pls.' Disc. Resps. at Interrog. No. 6; Albert Aff. at ¶ 18.) The Memo explained that prospective stockholders were required to (1) "sign a stockholders' agreement and a stock-subscription agreement with [Defendant]"; and (2) "agree to purchase 1,000 shares of Voting Common Stock at a price of $2 per share and 250 shares of B Participating Common Stock at a price of $2 per share for a total investment of $2,500." (Def.'s Mem. Exh. 7 at PX 006-007.) The Memo also required that payment be submitted via check. (Def.'s Mem. Exh. 7 at PX 019.) Albert told Plaintiffs "not to worry about the money because [they would] handle it in one fashion or another" and that Albert would complete the necessary documents. (Rountree Dep. at 36:13-25.)

During their business relationship, Albert and Rountree met multiple times per year, Albert provided Plaintiffs with letters addressing Plaintiffs as "Shareholder" and delivered documents that referred to Plaintiffs as a "shareholder." (Pls.' Disc. Resps. at Interrog. No. 6; Albert Aff. at ¶ 31; Albert Aff. Exh. A at 11; Albert Aff. Ex C at 1.) Plaintiffs admittedly did not pay for Defendant's stock in the required form of a $2,500 check. (Pls.' Disc. Resps. at Interrog. No. 8 (ECF. No 22-2); Rountree Dep. at 56:15-24.) Plaintiffs were assigned a shareholder number of No. 312, but were not issued stock certificates. (Pls.' Verified Answers to Interrog. No. 5; Albert Aff. at ¶ 27-28; Albert Dep. at 119:4-10; Rountree Dep. at 41:24-42:20; Biby Decl. at ¶ 8.) Albert kept a handwritten log of clients, which did not reflect Plaintiffs as stockholders. (Def.'s Mem. Exh. 10 at CD00813; Albert Dep. at 69:9-71:13.)

Plaintiffs seek a declaratory judgment that they are, in fact, shareholders of Defendant's company, as well as judgment in their favor based on breach of contract and constructive fraud.

Defendant seeks a declaratory judgment that Plaintiffs are not shareholders of CDLIC and dismissal of Plaintiffs' breach of contract and constructive fraud claims.

## II. STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Id.* at 255.

When considering a case for summary judgment, the Court cannot weigh the evidence to enter a judgment, but simply must determine if there is a genuine issue for trial. *Greater Balt. Ctr. for Pregnancy Concerns v. Baltimore*, __F.3d__, 2013 WL 3336884, at *12 (4th Cir. July 3, 2013) (quoting *Anderson*, 477 U.S. at 249). Even on cross-motions for Summary Judgment, this Court cannot resolve factual issues, it can only identify them. *Greater Balt. Ctr. for Pregnancy Concerns*, __F.3d __, 2013 WL 3336884, at *12 (citing *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012)). Of course, the Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson*, 477 U.S. at 247-48. Indeed, summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat an otherwise properly supported motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of some "metaphysical doubt" concerning a material fact. *Lewis v. City of Va. Beach Sheriff's Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted).

A "material fact" is one that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 247-48; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact only arises when the evidence, viewed in the light most favorable to the non-moving party, is sufficient to allow a reasonable jury to return a verdict in that party's favor. *Anderson*, 477 U.S. at 248.

III. ANALYSIS

A. A genuine issue of material fact exists as to whether Plaintiffs are shareholders of CDLIC.

Both parties move for declaratory judgment in their favor on the issue of whether Plaintiffs are shareholders of CDLIC. The Court finds that genuine issues of material fact exist as to whether Plaintiffs are shareholders of CDLIC.

The Code of Virginia defines a shareholder as "the person in whose name shares are registered in the records of the corporation." Code of Virginia § 13.1-603. In determining shareholder status, the Court looks to (1) the reflection of the shareholder's name in the company books, (2) a stock certificate proving ownership of shares, (3) payment for the shares of stock, and (4) the company payments of dividends upon the stock to the shareholder. *Turnbull v. Payson*, 95 U.S. 418, 420-21 (1877). It is well-established that the reflection of a person's name in the company books indicates shareholder status. *See Finn v. Brown*, 142 U.S. 56, 63 (1891) ("[H]e is presumed to be the owner of the stock when his name appears upon the books of the bank as such owner . . ."); *see also Turnbull*, 95 U.S. at 421 ("Where the name of an individual appears on the stock-book of a corporation as a stockholder, the *prima facie* presumption is that he is the owner of the stock, in a case where there is nothing to rebut that presumption . . ."). However, although the company's records and possession of a stock certificate are *prima facie* evidence of stockholder status, Code of Virginia § 8.8A-114(3), neither is dispositive. *Barber v. VistaRMS, Inc.*, 272 Va. 319, 328, 634 S.E.2d 706, 711-12 (2006) (citing *Young v. Young*, 240 Va. 57, 62, 393 S.E.2d 398, 400 (1990)). Such evidence creates a presumption of stock ownership that can be rebutted. *Turnbull*, 95 U.S. at 421; *see also Stuart v. Valley R. Co.*, 1897 WL 5947, at *8 (Va. Sept. 18, 1879) (allowing the introduction of evidence to rebut the presumption that the defendant was a shareholder, including ledgers, subscription lists and

company memoranda). Courts have accepted testimony regarding placing shareholders on the company books, evidence of authorizing share subscriptions and proof of payment for the shares as further evidence to otherwise establish stock ownership in connection with company records. *Champman v. Virginia Real Estate Inv. Co.*, 96 Va. 177, 177, 31 S.E. 74, 78 (1898).

Plaintiffs argue that they are stockholders of Defendant company, because they are identified as "shareholder" in Defendant CDLIC's documents and that they paid for their shares by either "an adjusting book entry made by [Defendant] (charging one of Plaintiffs['] service accounts with the $2,500 purchase price) or through services performed and benefits conferred upon [Defendant] by Plaintiffs." ((Albert Aff. at ¶ 31; Pls.' Mem. at 9; Pls.' Disc. Resps. at Interrog. No. 5.) Defendant accepted Plaintiffs' consideration "consisting of tangible and intangible property and benefit to [Defendant], including services performed and contracts for services to be performed." (Albert Aff. at ¶ 23; Pls.' Disc. Resps. at Interrog. No. 5; Pls.' Mem. at 12-14.) Plaintiffs maintain that they were, in fact, paid dividends, citing Defendant's 2009 Summary of Operations and Equity, which reflects that Plaintiffs were paid ($13,142) in cash dividends and Defendant's 2010 Investors' Liquidating Values Dividend Calculation, which indicates that Plaintiffs received $28,506 in dividends ((Pls.' Disc. Resps. at Interrog. No. 9; Def.'s Mem. Exh. 6 at PX 176, PX 180; Plaintiffs' Supplemental Memorandum in Support of Motion for Summary Judgment ("Pls.' Suppl.") (ECF No. 31) Exh. 9 at CD00198.) Additionally, Plaintiffs argue that their receipt of equity statements from Defendant further demonstrates their status as shareholders in Defendant's company. (Pls.' Disc. Resps. at Interrog. No. 6.)

Defendant argues that its books do not, in fact, reflect Plaintiffs as shareholders, in spite of their names appearing in the "shareholder" column. (Biby Decl. at ¶¶ 2-7.) Although not

dispositive, Defendant points out that Plaintiffs do not possess a stock certificate, even though Defendant's stockholders were issued such documents. (Albert Dep. at 119:4-10; Rountree Dep. at 41:24-42:20; Biby Decl. at ¶ 8.) No record of an executed Stock Subscription Agreement exists, although Albert testified that he gave an agreement to the Board. (Albert Dep. at 46:6-10, 47:2-14.) Defendant also maintains that Plaintiffs were not shareholders, because Plaintiffs were required to pay in the form of a check, (Def.'s Mem. Exh. 7 at PX 019); yet, there is no record of such payment. (Pls.' Disc. Resps. at Interrog. No. 8; Albert Dep. at 14:13-15:7, 118:15-23; Albert Aff. Exh. A at 18; Albert Aff. Exh. B at 9; Def.'s Mem. Exh. 6 at PX 176; Rountree Dep. at 52:4-15; Meloy Decl. (ECF No. 21-9) at ¶¶ 3-4.) Defendant also disputes that Plaintiffs were paid dividends. (Biby Decl. at ¶ 6.)

Several material facts as set forth by the parties are in dispute. As to the first element of shareholder status, Defendant denies that its books reflect Rountree as a shareholder, (Biby Decl. at ¶¶ 2-6; Biby Decl. Exh. A at CD00816; Biby Decl. Exh. B at CD00817-CD00823; Exh. C at CD00002-CD00012; Biby Decl. Exh. D at CD00127-CD00136; Biby Decl. Exh. F at CD00886-CD00930); however, evidence shows that Plaintiffs' names appear in several documents that identify them by the title of "shareholder." (Albert Aff. Exh. A at 11; Biby Decl. Exh. E at CD00190, CD00198; Albert Aff. at ¶ 31.) Specifically, Defendant's 2003, 2007 and 2008 Investors' Statutory and Liquidating Values statements include Plaintiffs listed in a column entitled "SHAREHOLDER NAME." (Albert Aff. Exh. A at 11; Pls.' Suppl. Exh. 2 (ECF No. 31-2) at CD00552; Pls.' Suppl. Exh. 5 at BRISCOE00018.) Additionally, Defendant's counsel sent an email to the Virginia State Corporation Commission Bureau of Insurance ("Commission") on November 18, 2008, which attached the 2007 Investors' Statutory and Liquidating Values statement, that includes Plaintiffs in a chart that "sets forth the statutory

8

values and liquidating values for [Defendant's] shareholders effective as of December 31, 2007." (Pls.' Suppl. Exh. 2 at CD00516.) In the same email, Defendant's counsel attached another statement, in which Plaintiffs were not included, that Defendant described as a chart that "sets forth the statutory values and liquidating values as of December 31, 2007 for individuals/entities which were previously shareholders of [Defendant's company] but [were then] in liquidation." (Pls.' Suppl. Exh. 2 at CD00516.)

Plaintiffs received letters with the salutation "Dear Shareholders" from Defendant on October 8, 2007 and November 13, 2008. (Pls.' Disc. Resps. Exh. C at 1; Pls.' Suppl. Exh. 3 at CD00484.) On October 13, 2009, Defendant's counsel sent another email to the Commission regarding Defendant's payment of dividends to its shareholders. (Pls.' Suppl. Exh. 6 at CD00700.) Defendant's counsel attached a document to that email, described as "a spreadsheet listing all eligible stockholders their liquidating values and the proposed dividend amount payable to each stockholder," which included Plaintiffs under a column entitled "SHAREHOLDER NAME." (Pls.' Suppl. Exh. 6 at CD00700-CD00702.) On October 23, 2009, Defendant's counsel emailed the Commission to say that one entity on the eligible shareholder list that he sent on October 13, 2009, should not have been included as a shareholder; however, that entity was not Plaintiffs. (Pls.' Suppl. Exh. 7 at CD00704.)

The Board of Directors' minutes from December 21, 2009, reflect that the Board discussed issuing dividends to stockholders and identified a spreadsheet, which includes Plaintiffs' names, that listed the "individual dividends to be paid." (Pls.' Suppl. Exh. 8 at CD00707, CD00716.) Defendant's 2010 dividend calculation in the Investors' Liquidating Values statement included Plaintiffs under a column also titled "SHAREHOLDER NAME" and showed that Plaintiffs had dividends and shareholder equity allocated to them. (Biby Decl. Exh.

9

E at CD00190, CD00198; Pls.' Suppl. Exh. 9 at CD00198.) This evidence is irreconcilable with Defendant's claims that its records do not reflect Plaintiffs as shareholders. (Biby Decl. Exh. F at CD00886-CD00930.)

Defendant highlights that Plaintiffs do not appear in the General Ledger, which reflects all entities and individuals that purchased Defendant's stock between 2001 and 2004, and point out that Plaintiffs do not appear in a list that Kaye Biby, consultant and assistant secretary for Defendant, created to track shareholders that received proxy forms from Defendant. (Biby Decl. at ¶¶ 2-3; Biby Decl. Exh. A at CD00816; Biby Decl. Exh. B at CD008917-CD00823.) Additionally, Plaintiffs are not listed in a spreadsheet that Biby sent to the Commission on November 17, 2011, which reflected Defendant's shareholders. (Biby Decl. at ¶ 4; Biby Decl. Exh. C at CD00002-CD00012.) Plaintiffs are also not listed on documents that reflect Defendant's shareholders from 1989 to 2003. (Biby Decl. at ¶¶ 5, 7; Biby Decl. Exh. D at CD00127-CD00136; Biby Decl. Exh. F at CD00886-CD00930.) Biby created a document in early 2010 that highlighted entities, including Plaintiffs, that were not shareholders of Defendant's company. (Biby Decl. at ¶ 6; Biby Decl. Exh. E at CD00190-CD00199.) However, that document still shows Plaintiffs in a column entitled "SHAREHOLDER NAME." (Biby Decl. Exh. E at CD00190-CD00199.) These conflicting documents, showing Plaintiffs as shareholders in some but not in others, create a genuine dispute of material fact as to whether Defendant's books identify Plaintiffs as shareholders.

As to whether Plaintiffs paid for CDLIC stock, the facts are also in dispute. Defendant maintains that Plaintiffs were not shareholders, because Plaintiffs were required to pay in the form of a check and, notwithstanding that requirement, no record of any form of payment exists. Plaintiffs assert that Defendant waived the payment by check requirement and accepted

Plaintiffs' consideration "consisting of tangible and intangible property and benefit to [Defendant], including services performed and contracts for services to be performed." (Albert Aff. at ¶ 23; Pls.' Disc. Resps. at Interrog. No. 5; Pls.' Mem. at 12-14.)

While the Memo required payment by check, the Code of Virginia allows shares of stock to be issued for "consideration consisting of any tangible or intangible property or benefit to the corporation, including . . . services performed [and] contracts for services to be performed," Code of Virginia § 13.1-643(B). Here, while Plaintiffs admittedly did not pay by check, they argue that they paid for their shares by either "an adjusting book entry made by [Defendant] (charging one of Plaintiffs['] service accounts with the $2,500 purchase price) or through services performed and benefits conferred upon [Defendant] by Plaintiffs." (Pls.' Disc. Resps. at Interrog. No. 5; Pls.' Mem. at ¶¶ 12-14; Pls.' Disc. Resps. at Interrog. No. 5; Albert Aff. at ¶ 23.) Specifically, Albert stated that Plaintiffs paid for their shares of stock in CDLIC or that he "assumed" that Plaintiffs paid the necessary funds. (Albert Aff. at ¶ 23; Albert Dep. at 53:10-14.)

While there is no dispute as to the fact that Plaintiffs failed to produce a check as consideration for their stock purchase, the parties' claims as to whether Plaintiffs paid for stock are irreconcilable. Because the conflicting evidence creates a genuine issue of fact as to whether Plaintiffs paid for the stock, the case is inappropriate for summary judgment.

Finally, as to whether CDLIC paid dividends to Plaintiffs, the evidence in the record is contradictory, thereby rendering a finding of summary judgment improper. Evidence of dividends, along with other evidence of stock ownership, is conclusive. *Turnbull*, 95 U.S. at 421. Although Defendant contends that it did not pay dividends to Plaintiffs based on Biby's statements (Biby Decl. at ¶ 6), the records reflect "($13,142)" in cash dividends paid to Plaintiffs

in CDLIC's 2009 Summary of Operations and Equity (Def.'s Mem. Exh. 6 at PX 176, PX 180). Plaintiffs maintain that they were, in fact, paid dividends and cite to Defendant's 2009 Summary of Operations and Equity (Def.'s Mem. Exh. 6 at PX 176, PX 180) and Defendant's 2010 Investors' Liquidating Values Dividend Calculation, which reflects that Plaintiffs had $28,506 in dividends (Pls.' Suppl. Exh. 9 at CD00198). Plaintiffs also assert that Rountree and Albert discussed Plaintiffs' equity interest in CDLIC and that Plaintiffs acted on Albert's recommendation by accruing, accumulating and rolling over dividends and charges each year. (Pls.' Disc. Resps. at Interrog. No. 6; Albert Aff. at ¶ 22.) The parties' evidence as to this point is at odds, creating disputed material facts which require jury determination.

Because three of the four elements[1] to establish shareholder status hinge on disputes of material fact, the question of whether Plaintiffs hold shares in CDLIC renders summary judgment inappropriate. Therefore, Plaintiffs' request for a declaration that they are shareholders and Defendant's request for a declaration that Plaintiffs are not shareholders are denied, as the issues of fact cannot be reconciled and must be submitted to a jury.

### B. Disputed facts exist as to whether Defendant breached the shareholder agreement with Plaintiffs.

Plaintiffs claim that Defendant breached the shareholder agreement between the parties, because Defendant failed to pay Plaintiffs the liquidating value of their equity interest in CDLIC as required under the agreement. (Compl. at ¶¶ 32-34.) Because genuine issues of material fact exist as to whether Plaintiffs were shareholders in CDLIC and whether a legal obligation exists, the Court cannot grant summary judgment for this claim.

Plaintiff's breach of contract claims requires "(1) a legally enforceable obligation of a

---

[1] The element of possession of a stock certificate is not in dispute. Plaintiffs concede that they do not have a stock certificate for their alleged shares of CDLIC. However, as noted above, possession of such stock certificates is not dispositive.

defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004) (citations omitted). The question of whether a contract existed that would create a legal obligation between the parties here hinges on whether Plaintiffs hold shares of stock in CDLIC. As discussed above, genuine issues of material fact exist about Plaintiffs' shareholder status; therefore, genuine issues of material fact about Plaintiffs' breach of contract claim also exist as to whether there is a legally enforceable obligation. Thus, the jury must resolve the conflict. *Five Lakes, Inc. v. Randall, Inc.*, 214 Va. 4, 5 (1973). Therefore, summary judgment on this claim must be denied.

        C. Genuine factual disputes exist in determining Plaintiffs' constructive fraud claim.

As detailed above, there is a genuine dispute as to Plaintiffs' status as a shareholder of CDLIC and whether Plaintiffs are entitled to recover under the shareholder agreement. If the jury finds that Plaintiffs are not shareholders, Plaintiffs may still recover, alternatively, under tort law on their constructive fraud claim. Because material facts exists as to Plaintiffs' other claims, Plaintiffs constructive fraud claim must be determined by the jury, as well, assuming the jury first determines whether Plaintiffs were shareholders.

Plaintiffs allege constructive fraud stemming from Defendant's oral and written representations to Plaintiffs that Plaintiffs were shareholders in CDLIC, which Plaintiffs relied upon by continuing to do business with Defendant with the expectation of receiving dividends from Defendant. (Compl. at ¶¶ 35-39.) Defendant argues that Plaintiff's claim arises out of contract, rather than by tort, which would preclude such a claim. Further, Defendant maintains that under a tort claim, Plaintiffs' reliance on Defendant's representations was unreasonable as a matter of law. (Def.'s Mem. at 20; Def.'s Reply in Supp. of its Mot. for Summ. Judg. at 5.)

To determine whether a claim may be brought under contract or under tort, "the source of the duty violated must be ascertained." *Richmond Metro. Auth. v. McDevitt St. Bovis,* 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998). Claims sound in contract "[i]f the cause of complaint before an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists)." *Oleyar v. Kerr,* 217 Va. 88, 90, 225 S.E.2d 398, 399-400 (1976) (quoting *Burks Pleading and Practice* § 234 at 406 (4th ed. 1952)). The action sounds in tort if "the relation of the plaintiff[s] and the defendant[] be such that a duty arises from that relationship, irrespective of the contract, to take due care and the defendants are negligent." *Id.* To bring a claim under both contract and tort, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Richmond Metro. Auth.,* 256 Va. at 558, 507 S.E.2d at 347 (citations omitted).

Because Plaintiffs' status as shareholders in Defendant's company is disputed, Plaintiffs' constructive fraud claim cannot be barred during summary judgment as it is disputed whether a contract existed between the parties. If Plaintiffs were, in fact, shareholders, their claim would arise from their Shareholder agreement with Defendant and would, therefore, not be actionable in tort. *See Oleyar,* 217 Va. at 90, 225 S.E.2d at 399-400 (holding that claims should be brought under contract if no duty otherwise existed). However, if Plaintiffs' claim does not arise from the contract, but under tort, then Plaintiffs may have a cognizable constructive fraud claim that would not be appropriate for summary judgment. So, this claim must be assessed after the jury first determines whether Plaintiffs are shareholders. If the jury determines that Plaintiffs are not shareholders, the issue becomes whether the facts are in dispute as to the tort of constructive fraud.

Under Virginia law, constructive fraud is a false representation of material fact, made innocently or negligently, resulting in damage to the injured party, because of reliance on the misrepresentation. *Mortarino v. Consultant Eng'g Servs., Inc.*, 251 Va. 289, 295, 467 S.E.2d 778, 782 (1996) (citing *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994)) (citations omitted). Constructive fraud is essentially "negligent misrepresentation." *Richmond Metro. Auth*, 256 Va. at 559, 507 S.E.2d at 347 ("[Plaintiff's] allegations of constructive fraud are nothing more than allegations of negligent performance of contractual duties and are, therefore, not actionable in tort."). Further, Plaintiff's reliance must be reasonable. *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999). Reliance can be "*per se* unreasonable" if a plaintiff receives evidence that would "clearly and overwhelmingly indicate" that the plaintiff's position is unreasonable or if a plaintiff is expressly told that the evidence that the plaintiff relied on is, in fact, unreliable. *Gitter v. Cardiac & Thoracic Surgical Assoc., Ltd.*, 419 Fed.Appx. 365, 370, 2011 WL 1042261, at *4 (4th Cir. 2011). But, typically, the question of reasonable reliance is a question for the jury. *Id.*

Here, evidence submitted by Plaintiff demonstrates that Defendant's President (Albert) made representations by providing Plaintiffs with letters addressing Plaintiffs as "Shareholder" and, on occasion, delivering documents that referred to Plaintiffs as a "shareholder." (Albert Aff. at ¶ 31; Albert Aff. Exh. A at 11; Albert Aff. Exh C at 1.) Also, Plaintiffs were assigned a shareholder number of "No. 312." (Plaintiffs' Verified Answers to Interrogatory No. 5; Albert Aff. at ¶ 27-28; Albert Dep. at 46:11-19.) From this, the jury could find that Plaintiffs' reliance was reasonable. Therefore, this count is inappropriate for summary judgment. *See MainStreet Bank v. National Excavating Corp.*, 791 F.Supp.2d 520, 532 (E.D. Va. 2011) (holding that whether the defendants misrepresented information and whether plaintiff's reliance was

15

reasonable are matters for a jury).

### D. Estoppel

Plaintiffs assert that quasi-estoppel should bar Defendant from denying that Plaintiffs are shareholders. (Pls.' Reply to Def.'s Objection and Opposition to Supplemental Mem. in Supp. of Mot. for Summ. Judg. at 4.) Plaintiffs raised this argument for the first time in their Reply to Defendant's Objection and Opposition to Supplemental Memorandum in Support of Motion for Summary Judgment. Even though this was procedurally raised at an inappropriate time during the briefing of the motion, the Court summarily addresses their arguments and finds that summary judgment on this basis is inappropriate.

Plaintiffs contend that Defendant must be estopped under the theory of quasi-estoppel from claiming that Plaintiffs were not shareholders on the basis that they represented to the Commission that Plaintiffs were eligible shareholders. (Pls.' Reply to Def.'s Obj. and Opp. to Suppl. Mem. in Supp. or Mot. for Sum. Judg. at 3.) Because Defendant obtained approval from the Commission to pay a dividend to the list of eligible shareholders and then paid out the dividends to Plaintiffs in that amount, Plaintiffs argue that Defendant cannot now take the position that Plaintiffs are not shareholders of CDLIC. (Pl.'s Reply to Def.'s Obj. and Opp. to Suppl. Mem. in Supp. or Mot. for Sum. Judg. at 3-4.)

"[Q]uasi-estoppel applies when the offending party takes a different position than his or her original position, and, either the offending party gains an advantage or causes a disadvantage to the other party; the other party is induced to change positions; or, it would be unconscionable to permit the offending party to maintain an inconsistent position from which it has already derived a benefit or in which it has acquiesced." *County School Bd. of Henrico County, Virginia v. RT*, 433 F. Supp. 2d 692, 704 (E.D.Va. 2006). Quasi-estoppel is an inherently flexible

doctrine that is applied upon considerations of justice and fairness. *Id.* (citing *Whiteacre Partnership v. Biosignia, Inc.*, 358 N.C. 1, 18, 591 S.E.2d 870, 882 (2004)).

Defendant, through counsel, sent the Commission a letter requesting approval to issue dividends to all eligible shareholders. (Pls.' Suppl. Exh. 2 at 1-2.) Attached to this letter was a spreadsheet listing all of Defendant's eligible shareholders, which included Plaintiffs. (Pls.' Suppl. Exh. 2 at 10.) However, as discussed above, whether Defendant paid Plaintiffs dividends is disputed. (Biby Decl. Exh. E at CD00190, CD00198; Biby Decl. Exh. F at CD00886-CD00930; Pls.' Suppl. Exh. 9 at CD00198.) Therefore, it cannot be found that either party changed their position in reliance of Defendant's representations to the Commission or that Defendant acquiesced in furtherance of this position. Because genuine disputes of facts exist as to whether Defendant paid dividends or if either party changed their position in reliance on Defendant's position to the Commission, the Court must deny summary judgment on the theory of quasi-estoppel.

IV. Conclusion

For the reasons set forth above, the Court DENIES Plaintiffs' Motion for Summary Judgment and DENIES Defendant's Motion for Summary Judgment.

Let the Clerk file this Opinion electronically and notify all counsel accordingly.

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: August 13, 2013